IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CV-42-FL

| | | |
|---|---|---|
| FIRST PROTECTIVE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LINDA STOKES RIKE; LEWIS EDWARD O'LEARY; PROBUILDERS OF THE CAROLINAS, INC.; WILLIAM SCOTT HEIDELBERG; HEIDELBERG AND MULLENS, INC.; RONALD PAUL HICKS; and STORMPRO PUBLIC ADJUSTERS, LLC, | ) ) ) ) ) ) ) ) ) | ORDER |
| | ) | |
| Defendants. | ) | |

- - - - -

| | | |
|---|---|---|
| LINDA STOKES RIKE, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST PROTECTIVE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Counterclaim Defendant. | ) ) | |

This matter is before the court on motion by defendant Linda Stokes Rike ("Rike") for

judgment on the pleadings. (DE 102).[1] The issues raised have been briefed fully and are ripe for

ruling. For the following reasons, the motion is granted in part and denied in part.

---

[1] Also pending is a joint motion by the parties to extend case deadlines (DE 112), which the court allows on the terms set forth in the conclusion of this order.

**STATEMENT OF THE CASE**

Plaintiff commenced this action May 13, 2022, arising out of a disputed insurance claim for a water leak in defendant Rike's residence (the "water leak claim"). Plaintiff seeks a declaratory judgment vacating an appraisal of loss in the amount of $1,036,000.00 (the "appraisal") signed by defendants William Scott Heidelberg ("Heidelberg") and Lewis Edward O'Leary ("O'Leary"), on the basis that it is invalid due to: 1) conflict of interest and bias of O'Leary, who served as an umpire during the appraisal ("Count I"), 2) improper coverage and causation determinations made therein ("Count II"), 3) inclusion of expenses, in part, not incurred by Rike ("Count III"), and 4) inclusion of loss amounts from separate insurance claims by Rike arising from Hurricanes Florence and Dorian ("Count IV").[2]

Plaintiff also asserts three claims for damages against defendants based on their conduct during the appraisal and insurance claim adjustment process: 1) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("Count V"); 2) tortious interference with contract (against all defendants except Rike) ("Count VI"); and 3) civil conspiracy against defendant Rike and defendant Ronald Paul Hicks ("Hicks"), a public adjuster, and his company defendant Stormpro Public Adjusters, LLC ("Count VII").

Finally, plaintiff asserts a claim for declaratory judgment against defendant Rike for breach of a "concealment or fraud" provision in the insurance policy issued by plaintiff to defendant Rike. ("Count VIII"). Plaintiff seeks a declaration that the disputed water leak claim is void in its

---

[2] Plaintiff and defendant Rike were litigants in a prior separate case involving a claim based upon Hurricane Florence damage to the same residence. See No. 4:20-CV-124-D (E.D.N.C.). In an order in that case entered January 28, 2021, the court granted defendant Rike's motion for judgment on the pleadings on a counterclaim for breach of insurance policy, and it also dismissed plaintiff's claim seeking to invalidate an appraisal award premised upon fraud, mistake, or other impeaching circumstances. First Protective Ins. Co. v. Rike, 516 F. Supp. 3d 513, 529 (E.D.N.C. 2021) ("Rike I"). Defendant Rike's counterclaims for unfair and deceptive trade practices and breach of good faith were allowed to proceed forward, but the parties reached a court-hosted settlement thereafter and the case closed with a stipulation of dismissal on March 11, 2021.

entirely, that plaintiff has no obligation to make further payments on the claim, and that plaintiff is entitled to a return of all proceeds paid to defendant Rike on the claim.

All defendants filed answers to the complaint,[3] and defendant Rike also filed the following counterclaims against plaintiff August 1, 2022: 1) breach of contract, 2) breach of covenant of good faith and fair dealing, and 3) unfair claim settlement practices, under North Carolina General Statute § 58-63-15(11) and Chapter 75. Defendant Rike seeks payment of the full amount of the appraisal award and compensatory damages, costs, and fees. Plaintiff filed an answer to defendant Rike's counterclaims September 14, 2022.[4]

In case management order entered January 12, 2023, the court set a September 29, 2023, deadline for discovery and a December 1, 2023, deadline for dispositive motions. Upon joint motions of the parties, however, the court has extended those deadlines several times, most recently to January 23, 2025, and March 27, 2025, respectively.

In the meantime, in June 2023, the O'Leary defendants filed motions for judgment on the pleadings and for protective order, premised upon defendant O'Leary's asserted immunity from suit and discovery, under the North Carolina Revised Uniform Arbitration Act, N.C. Gen. Stat. §§ 1-569.1 et seq.[5] The court denied the O'Leary defendants' motions, October 12, 2023, and it ordered them to respond to discovery within 30 days of the date of that order. See First Protective

---

[3] Defendants O'Leary and ProBuilders of the Carolinas, Inc. (collectively "O'Leary defendants") originally filed an answer pro se, and then filed an amended answer October 2, 2022, following entry of appearance of counsel for the O'Leary defendants. For purposes of this order, the court refers to these two defendants collectively as the "O'Leary defendants" because defendant O'Leary is alleged to be the "principal owner, officer, director and registered agent for" defendant ProBuilders of the Carolinas, Inc. (Compl. (DE 5) ¶ 7).

[4] On November 16, 2022, the court denied defendant Rike's motion for entry of default against plaintiff on her counterclaims, which motion was premised upon plaintiff's late filing of its answer to defendant Rike's counterclaims. (Order (DE 50) at 1-2).

[5] Plaintiff also filed a motion to compel discovery from the O'Leary defendants, which the O'Leary defendants opposed on the same basis asserted in their motions. The O'Leary defendants also filed a motion for attorney's fees.

3

Ins. Co. v. Rike, 698 F. Supp. 3d 832, 844 (E.D.N.C. 2023) (herein, "Rike II," or the "October 12, 2023, order"). Thereafter O'Leary defendants noticed an interlocutory appeal of the court's October 12, 2023, order, which appeal is calendared for oral argument March 20, 2025, at 9:30 a.m. (See United States Court of Appeals Case No. 23-2160 (Docket Entry 38)). On their subsequent motion this court stayed the instant matter February 16, 2024, in that part related to the O'Leary defendants. (See Order (DE 94)).[6]

## STATEMENT OF THE FACTS

The court previously summarized the facts alleged in the complaint,[7] in its October 13, 2023, order regarding the O'Leary defendants. See Rike II, 698 F. Supp. 3d at 834-837. The court incorporates that summary herein for purposes of background for the instant motion. Additional facts alleged in the complaint and in defendant Rike's counterclaims will be discussed in the analysis herein.

> Plaintiff and defendant Rike entered into an insurance contract, effective from May 18, 2019, to May 18, 2020, (the "policy"), which provided coverage to Rike's residence at 309 S. 19th Street in Morehead City, North Carolina (the "property"). On or about October 9, 2019, Rike submitted a claim to plaintiff, "alleging that a toilet supply line leaked and caused damage" to the property on October 9, 2019 (the "water leak claim").

> Plaintiff began to adjust and investigate the water leak claim, concurrently with a previous claim under an earlier policy term that had been pending since September 2018 due to damage from Hurricane Florence (the "Florence claim"). Plaintiff's investigation continued through and beyond October 2020, when Rike submitted a separate later claim for damage from Hurricane Dorian allegedly occurring on or about September 6, 2019 (the "Dorian claim").

---

[6]   The court addressed a separate discovery dispute and related motion to compel pertaining to defendants Hicks and StormPro Public Adjusters, LLC, through orders entered October 18, 2023, December 7, 2023, February 20, 2024, and April 3, 2024, and through hearing held January 8, 2024. An additional motion to compel response to subpoena from Cricket Communications, Inc. filed by plaintiff was withdrawn by it on November 22, 2024.

[7]   All references to the complaint in the text or "Compl." in citations are to the corrected complaint filed May 13, 2022 (DE 5) unless otherwise specified.

4

Shortly into its investigation of the water leak claim, plaintiff received notice that Rike retained defendant Hicks as her public adjuster. Rike additionally has retained Hicks and defendant StormPro for the Florence claim and Dorian claim, as well as a claim for Florence damage to one of her business properties owned by her wholly owned business, White House Properties, Inc.

On October 1, 2020, Hicks issued to plaintiff a "demand for appraisal," pursuant to the policy's appraisal provision, which provides:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> 1. Pay its own appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally.

(Compl. Ex. A (DE 1-1) at 27; see Compl. ¶ 30).[8]

In October 2020, defendant Hicks informed plaintiff that defendant Heidelberg would serve as Rike's appraiser and plaintiff thereafter named James Starrette ("Starrette") as its appraiser. Starrette and defendant Heidelberg agreed to appoint John Robison ("Robison") as the umpire for the water leak claim; however, "Robison recused himself as umpire upon learning that he was designated as Rike's appraiser for Rike's [Florence claim], which was concurrently proceeding through a separate appraisal process to set the amount of the loss." (Compl. ¶ 32).

---

[8]  In citations to the record, page numbers specified are those appearing in the court's case management / electronic case filing (CM/ECF) system rather than the page number showing on the face of the underlying document, if any. In the court's October 13, 2023, order, the court inadvertently stated incorrectly that the portion of the appraisal provision quoted in the complaint was not in the policy attached to the complaint. See Rike II, 698 F.Supp.3d at 835 n.6. In fact a "Special Provisions – North Carolina" endorsement in the policy attached to the complaint includes the appraisal provision quoted in the complaint, in addition to the following language:

> In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

(Compl. Ex. 1 (DE 1-1) at 42; see Compl. ¶ 30).

"The recusal of Robison as umpire due to his conflict of interest was known to [defendants] Rike, Hicks and Heidelberg." (Id. ¶ 33).

On March 20, 2021, defendant Heidelberg proposed that defendant O'Leary serve as the new umpire in the water leak claim appraisal, and Starette agreed. The next day, O'Leary signed a "declaration of appraisers addendum" wherein he stated:

> I, [O'Leary], accept the appointment of Umpire, and solemnly attest that I will act with the strict impartiality in the matter of differences that shall be submitted to me in connection with the above reference [sic] claim. I will decide a fair award according to the best of my knowledge, skill, and judgment. . . . I am not related to any of the parties to this Appraisal, and not interested as a creditor or otherwise in said described property or the insurance thereon.

(Compl. Ex. B (DE 1-2) at 1).

According to the complaint, undisclosed to Starrette or plaintiff, defendant O'Leary had "actively consulted and performed services on claims for [defendant] Hicks and his policyholder clients on insurance claims," and he had served predominately "as a consultant and appraiser for policyholders against insurers." (Compl. ¶¶ 37, 38). He was thus allegedly "bias[ed] towards the policyholder side of insurance disputes." (Id. ¶ 39). He was also "actively serving as a paid consultant to Rike and/or Hicks," hired by them and paid by them, for work on another "claim for Hurricane Florence damage to a property owned by White House Properties, Inc. (the 'White House Claim')." (Id. ¶ 42). According to the complaint, "[t]he failures of [defendants] O'Leary, Hicks, Heidelberg, and Rike to disclose anything about O'Leary's ongoing relationship with them and clear express bias towards Rike were willful and intended to deceive [plaintiff] into increasing the value of the [w]ater [l]eak [c]laim during [a]ppraisal." (Id. ¶ 50).

On April 21, 2021, one month after O'Leary signed on to be the umpire for the water leak claim, Heidelberg advised O'Leary that the appraisers could not agree on a valuation for the claim, and requested that O'Leary, as the umpire, settle the dispute. Over the next 11 months, between April 21, 2021 and March 15, 2022, the appraisal panel (Starrette, Heidelberg, and O'Leary) "deliberated and presented their respective positions in order to attempt to set the amount of the loss that resulted from the [w]ater [l]eak [c]laim." (Id. ¶ 52). "Most, if not all, of the [a]ppraisal [p]anel's deliberations are memorialized in writing through e-mails or letters." (Id. ¶ 53) "Not once during those [11] months did O'Leary disclose to Starrette or [plaintiff] that O'Leary was Rike's paid consultant on the White House Claim," nor that he "had an active, ongoing business relationship with Hicks or Heidelberg on other claims." (Id. ¶¶ 54-55).

On March 15, 2022, defendant O'Leary issued a one-page "appraisal award," signed by defendant Heidelberg the next day, which determined a total

6

"Amount of the Loss" of $1,036,000.00, which included the following itemized amounts:

| COVERAGE | ACV of the cost to repair | Amount of the Loss[3] |
|---|---|---|
| Coverage A - Building[1] | $634,000.00 | $634,000.00 |
| - Other Coverage A [2] | $ 80,000.00 | $ 80,000.00 |
| Coverage B – Other Structures | N/A | |
| Coverage C - Contents | | $ 78,000.00 |
| - Removal, clean & sanitize, store and return | | $ 40,000.00 |
| Coverage D – Loss of Use | | $204,000.00 |

(Compl. Ex. C (DE 1-3) at 1).[9] Starette, plaintiff's appraiser, did not agree with the appraisal award and declined to sign it or agree to its contents.

According to the complaint, during the appraisal panel's deliberations, defendant O'Leary made comments and rendered opinions about his views on causation and coverage issues, which plaintiff contends was prohibited under North Carolina law. Plaintiff also alleges that defendant Hicks made statements to plaintiff, as Rike's public adjuster, about her purported "Loss of Use Claim indicating she was 'living in a camper on her front lawn.'" (Compl. ¶ 79). Plaintiff contends these statements were false and/or misleading because plaintiff later testified during an "examination under oath ('EUO')," stating that "she had not incurred any Loss of Use expenses . . . because she lived in residences she already owned." (Id. ¶ 77).

Plaintiff also contends that the appraisal is invalid because it does not explain how it accounted for "actual incurred rebuild expenses," amounts paid under the Florence claim, "Code & Ordinance," loss to "personal property," and "betterments," as well as other damages or amounts under the Florence and Dorian claims. (Compl. ¶¶ 64-70).

Rike II, 698 F. Supp. 3d at 834-837.

---

[9]     In the table above, "ACV" refers to "Actual Cash Value." (Compl. Ex. C (DE 1-3) at 1). The referenced footnote (1) states: "The amount shown here is based upon available evidence regarding the amount spent on the overall rebuild, less the amount funded for the Hurricane Florence claim and further adjusted for the betterments minus the amount of downgrades used to cover the costs of the betterments." Footnote (2) states: "Minimum acceptable standard practice to comply with the proper workmanship standard within the policy, aka Code & Ordinance." Footnote (3) states: "Since the cost to repair is less than the ACV of the building, the cost to repair and the amount of the loss are one and the same." (Id.).

## COURT'S DISCUSSION

A.     Standard of Review

A motion for judgment on the pleadings is evaluated under "the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[10]

B.     Analysis

1.     Declaratory Judgment Claims (Counts I-IV, VIII)

Defendant Rike argues that plaintiff's declaratory judgment claims fail as a matter of law because plaintiff does not allege facts meeting the standard under North Carolina law for vacating an appraisal award or voiding an insurance claim.  For the reasons set forth below, the court disagrees as to declaratory judgment Counts I, II, IV, and VIII, but agrees as to declaratory judgment Count III.

---

[10]     Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

8

a.      Bias and Conflict of O'Leary (Count I)

"[I]n the absence of 'evidence of fraud, mistake, duress or other impeaching circumstance,' North Carolina clearly considers the parties contractually bound by the results of appraisals" made in accordance with the terms of an insurance policy. High Country Arts & Craft Guild v. Hartford Fire Ins. Co., 126 F.3d 629, 634 (4th Cir. 1997) (quoting Young v. New York Underwriters Ins. Co., 176 S.E. 271, 273 (N.C. 1934)).[11]

In Young, the North Carolina Supreme Court discussed the type of evidence that may be used to show "fraud . . . or other impeaching circumstance[s]." 176 S.E. at 273.[12] There, the court noted:

> The plaintiffs assert that [first individual], the appraiser, selected by the insurance company, was "interested," and that [second individual], the umpire selected by [the appraisers], was "interested," and that [first individual] fraudulently procured [second individual], the umpire, to sign the award. While the allegations of attack and assault upon the award are broad and sufficient, the vital question is: Was there evidence to support such allegations?

Young, 176 S.E. at 273.

The court determined, as an initial matter, that "[t]here was no evidence that either [challenged appraiser] had ever been employed by the defendant or had acted for the defendant in any transaction," thereby suggesting that either type of evidence, if shown, could establish "impeaching circumstances." Id. The court noted, by contrast, a case where "the appraiser for the defendant had been 'practically in his employ to make appraisals for four to six a year, this unknown to plaintiff.'" Id. (quoting Hill v. Ins. Co., 157 S.E. 599, 603 (N.C. 1931)).

---

[11]      The court cites to the Southeastern Reporter in those instances when a pin cite to the North Carolina Reporter is not available.

[12]      Where the court in Young does not address specifically circumstances of duress or mistake, the court addresses herein solely its treatment of fraud or other impeaching circumstances. In addition, plaintiff does not allege duress as a basis for setting aside the appraisal award. The court considers further the issues of mistake and fraud herein in addressing Counts II-IV and VIII.

9

The court next addressed the assertion that "the sole disqualifying circumstance as to [the first challenged appraiser] rests upon the fact that [he] had previously acted as appraiser for both insurance companies and individuals." Id. at 274. The court rejected this as a sufficient basis for impeaching circumstances, reasoning that representation of both "insurance companies and individuals" in the course of a professional practice would not render one "unfitted, after taking an oath, to act impartially and fairly in an insurance matter with which he had no professional connection." Id.

Finally, the court determined insufficient "the fact that [the umpire] before he was qualified as appraiser, had stated to [the second appraiser] that he considered the loss as total, and that after he was appointed umpire and made further investigation, he had changed his opinion." Id. at 274. In so holding, the court noted "[t]here is no evidence that any influence whatever had been brought to bear upon [the umpire] by any person or party," again suggesting that such evidence, if pertaining to a communication from outside of the appraisal, could be of the type to establish "impeaching circumstances." Id.

As pertinent to Count I, plaintiff has alleged facts giving rise to a plausible inference of "impeaching circumstances" in accordance with the standard set forth in Young. In particular, plaintiff alleges that defendant "O'Leary performed an inspection and prepared a report of the damages to [plaintiff's] business property for her in the White House Claim, and that she paid O'Leary for his services," and that this ongoing relationship was not disclosed to plaintiff or its appraiser, Starette. (Compl. ¶¶ 45, 86, 89). Further, plaintiff alleges that defendant O'Leary and defendant Rike had ex parte communications "at length" about the water leak claim. (Id. ¶¶ 143-144). This meets the test for alleging impeaching circumstances because the challenged appraiser had "been employed by the defendant or had acted for the defendant," unbeknownst to plaintiff,

and that he had communicated with defendant Rike ex parte. Young, 176 S.E. at 273. Thus, based on these allegations, this part of defendant Rike's motion for judgment on the pleadings must be denied.

In addition, plaintiff has alleged facts giving rise to an inference of "impeaching circumstances," due to the allegation that defendant O'Leary had a "predominant or <u>exclusive</u> role as consultant to public adjusters and policyholders against insurers, and that the O'Leary defendants "regularly work for and advocate for policyholders and not insurers, while the Probuilders website <u>exclusively</u> caters to policyholders." (Compl. ¶¶ 92-93) (emphasis added). Drawing all inferences in plaintiff's favor, as the court must at this juncture, an allegation of exclusive prior work for policyholders, in contrast to the example of an individual in Young who "previously acted as appraiser for <u>both</u> insurance companies and individuals," is sufficient to state a claim based upon "impeaching circumstances." 176 S.E. at 274 (emphasis added).

Defendant Rike argues that "courts have generally required dishonest acts by panel members affecting the authenticity of the appraisal, making it <u>tantamount to fraud</u>," citing an unpublished opinion by the North Carolina Court of Appeals in <u>Elledge v. Austin</u>, No. COA04-1003, 2005 WL 2649111 (N.C. App. Oct. 18, 2005). (Def's Mem. (DE 103) at 19) (emphasis added). As an initial matter, this generalized summary of the law is in conflict with the more nuanced discussion as set forth by the North Carolina Supreme Court in <u>Young</u>, which describes "impeaching circumstances" in addition to "fraud, mistake, [and] duress." 176 S.E. at 273. There is no statement in <u>Young</u> that "impeaching circumstances" must be "tantamount to fraud." <u>Cf.</u> <u>Young</u>, 176 S.E. at 273-74; Def's Mem. (DE 103) at 19; <u>see also</u> <u>Firemen's Fund Ins. Co. v. Flint</u> <u>Hosiery Mills</u>, 74 F.2d 533, 535 (4th Cir. 1935) (describing "bias on the part of an appraiser" combined with employment by the defendant as grounds for setting aside an insurance appraisal).

11

In any event, plaintiff alleges a dishonest act on the part of O'Leary in its allegation that O'Leary certified his commitment to "act with strict impartiality," when in fact he was partial to defendant Rike by virtue of his undisclosed employment by her. (Compl. ¶ 35).

Defendant Rike also cites to <u>Harleysville Mut. Ins. Co. v. Narron</u>, 155 N.C. App. 362, 364, (2002) ("<u>Narron</u>"), for the proposition that "ex parte communications between [an] umpire and one party's appraiser did not rise to the level of 'other impeaching circumstances' where the plaintiff could not show it affected the accuracy of the Award." (Def.'s Mem. (DE 103) at 19). In support of Count I, however, plaintiff does not rely solely upon ex parte communications between O'Leary and defendant Rike's appraiser. (See, e.g., Compl. ¶¶ 86-87, 92-93, 143-144). In addition, plaintiff has alleged facts giving rise to a plausible inference that O'Leary's prior employment by defendant Rike, ex parte communications directly with her, and bias, affected the accuracy of the award. For example, plaintiff alleges that "O'Leary expressly made comments and rendered his opinions to the Panel members about his views on causation and coverage issues"; the appraisal award incorporated losses caused by Hurricane Florence and Hurricane Dorian; and that the award was "nearly four (4) times higher than Hicks' original estimate." (Compl. ¶¶ 57, 59, 64, 68).

In sum, plaintiff has alleged sufficient facts to state a claim for declaratory judgment vacating the appraisal award based upon conflict and bias of defendant O'Leary. Therefore, defendant Rike's motion in this part is denied.

   b.  Defects in Appraisal (Counts II-IV)

In these counts, plaintiff seeks a declaratory judgment invalidating the appraisal due to improper "coverage and/or causation determinations" made therein (Count II), inclusion of expenses, in part, not "actually incurred" by defendant Rike (Count III), and "overlap and

confusion with other claims and coverage issues" (Count IV). Defendant Rike argues these counts must be dismissed because the grounds raised therein for vacating the appraisal award are "legally irrelevant." (Def's Mem. (DE 103) at 20). The court agrees, in part, with defendant Rike to the extent set forth herein.

As an initial matter, the grounds raised by plaintiff in these counts are at the margin of the law because they do not on their face fall within the categories of "fraud, mistake, duress or other impeaching circumstance[s]" for vacating an appraisal award. High Country Arts & Craft Guild, 126 F.3d at 634; Young, 176 S.E. at 273. Indeed, plaintiff does not assert anywhere in these claims that the alleged defects in the appraisal constitute fraud, duress, mistake or other impeaching circumstances. Plaintiff asserts instead a declaratory judgment claim based upon concealment and fraud in Count VIII. Further, plaintiff disclaims reliance on a theory that defects in the appraisal in this case should be characterized "as simply 'mistakes.'" (Pl's Mem. (DE 106) at 13).

Nevertheless, the North Carolina Supreme Court in North Carolina Farm Bureau Mut. Ins. Co. v. Sadler, 365 N.C. 178 (2011) ("Sadler"), recognized declaratory judgment claims by an insurance company seeking to set aside an appraisal award on grounds similar in part to those asserted by plaintiff here. In Sadler, the insurance company in its complaint

> alleged that the appraisal award calculated by [homeowner's] appraiser and the umpire fails to itemize the damages so that [insurance company] can determine the covered losses and apply policy exclusions and/or limitations. The award also purports to determine the cause of loss, to wit: wind.

365 N.C. at 181 (internal quotations omitted). In reversing a grant of summary judgment to the homeowner on his breach of contract claim for failure to pay losses determined by an appraisal, the court held that the homeowner had not met "the burden of showing that the insurance policy covered his losses." Id. at 182. The court noted "the policy's appraisal process is limited to a determination of the amount of loss and is not intended to interpret the amount of coverage or

resolve a coverage dispute." Id. at 183. The court further noted "[a]s a general rule, the sole purpose of an appraisal is to determine the amount of damage [and] [a]n appraisal does not necessarily determine the total amount due under the policy." Id. As such, the court held, "further inquiry into the factual context of [the homeowner's] losses and the appraisal award [was] necessary." Id.

Here, grounds asserted by plaintiff in Counts II and IV are similar to those asserted in Sadler. In particular, plaintiff alleges that "[d]uring the Appraisal Panel's deliberations about the Water Leak Claim, O'Leary expressly made comments and rendered his opinions to the Panel members about his views on causation and coverage issues." (Compl. ¶ 57). Plaintiff also alleges that "[t]he Water Leak Appraisal Award is cumulative of damages from not only the Water Leak Claim, but also from the Florence Claim . . . and the Dorian Claim," and it is "incapable of being understood on its face or with clear supporting documentation." (Compl. ¶¶ 108, 113). Plaintiff thus has alleged sufficient facts to state a claim for declaratory judgment in Counts II and IV based upon coverage/causation determinations and lack of clarification, following Sadler.

By contrast, the court finds no basis in the facts or law for supporting Count III, as a stand-alone claim for vacating the appraisal award, and plaintiff has cited no case vacating an appraisal award on the grounds asserted in Count III. At bottom, Count III rests on an assertion that the appraisers erroneously calculated the value of defendant Rike's "Loss of Use" of her residence, because "she did not actually incur any Loss of Use." (Compl. ¶ 103). Plaintiff also relies on the assertion that appraisers incorrectly calculated loss for "Code & Ordinance" "despite no proof of expenses actually being incurred to comply with Ordinances or Law." (Compl. ¶ 105). These

allegations, standing alone, do not meet the standard for vacating an appraisal award.[13]  Therefore, Count III fails as a matter of law.

With respect to Counts II and IV, the court recognizes defendant Rike's argument that "mistakes by appraisers, like those made by arbitrators, are insufficient to invalidate an award fairly and honestly made."  (Def's Mem. (DE 103) at 21 (quoting Narron, 155 N.C. App. at 371)).  In Narron, for example, the court determined that "there was no reason to invalidate the appraisal award based upon what plaintiff alleged was O'Leary's mistake in setting the amount of loss to include non-hurricane damage."  155 N.C. App. at 371.  In analyzing Counts II and IV, however, the court does not rely merely on alleged "mistake[s]" by the appraisers in including non-covered losses.  Id.  Rather, the court recognizes plausible inferences that may be drawn from allegations in the complaint that defendant O'Leary intentionally made coverage and causation determinations in the appraisal thus creating overlap and confusion with other claims and coverage issues. (Compl. ¶¶ 57, 108-113).  The court also follows the holding of the North Carolina Supreme Court in Sadler, where it postdates the North Carolina Court of Appeals decision in Harleysville. Furthermore, the court is mindful of the presently pending interlocutory appeal of the court's October 13, 2023, order in which the court determined that an appraisal is not subject to the provisions of the North Carolina Revised Uniform Arbitration Act, N.C. Gen. Stat. §§ 1-569.1 et seq.  See Rike II, 698 F. Supp. 3d at 843-44.  Therefore, the court leaves for another day, upon a more complete record, determination of the ultimate viability of Counts II and IV.

In sum, Count III is dismissed for failure to state a claim upon which relief can be granted, and counts II and IV are allowed to proceed, albeit with limitations as set forth herein.

---

[13]     The court addresses further below, and separately, plaintiff's assertion that the appraisal award should be vacated due to concealment or fraud, in part, because defendants Hicks and Heidelberg intentionally misrepresented and/or concealed information about plaintiff's loss of use.  (Compl. ¶¶ 146-153).

15

   c.  Concealment or Fraud (Count VIII)

  Defendant Rike argues that Count VIII should be dismissed because the undisputed facts do not support relieving plaintiff of its obligation to pay under the policy. The court disagrees.

  In Count VIII, plaintiff seeks a declaration that the water leak claim is void due to breach by defendant Rike of the policy's "concealment or fraud" provision, which provides as follows:

### R. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

(Compl. Ex. 1 (DE 1-1) at 29) (the "concealment or fraud provision").

  "[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." <u>Sadler</u>, 365 N.C. at 182. "[W]hen interpreting a contract for insurance, the plain language and ordinary meaning of the policy control unless the contract specifically defines certain terms or the context suggests otherwise." <u>Cato Corp. v. Zurich Am. Ins. Co.</u>, 909 S.E.2d 144, 148 (N.C. 2024). "Exclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." <u>Maddox v. Colonial Life & Acc. Ins. Co.</u>, 303 N.C. 648, 650 (1981).

  Plaintiff has alleged sufficient facts giving rise to a plausible inference that defendant Rike breached the concealment or fraud provision in three respects. First, plaintiff alleges that, during the examination under oath, Rike misrepresented the extent of her communications with defendant

O'Leary during the appraisal process of the water leak claim. (See Compl. ¶¶ 142-145). In particular, plaintiff alleges defendant Rike "testified that she had only spoken with O'Leary regarding access to the Property for an inspection during the Appraisal process of the Water Leak Claim," whereas other information provided by O'Leary indicates they talked "at length" and had "multiple conversations" about the water leak claim. (Id. ¶¶ 142-143). Coupled with other allegations in the complaint about alleged bias and conflicts of O'Leary, these allegations permit an inference that defendant Rike "[i]ntentionally concealed or misrepresented [a] material fact or circumstance," so as to minimize plaintiff's scrutiny of defendant Rike's contacts with defendant O'Leary. (Compl. Ex. 1 (DE 1-1) at 29).

Second, plaintiff alleges that defendant Hicks, on behalf of defendant Rike, made false statements regarding Rike's loss of use of her property. (See id. ¶¶ 146-153). Specifically, plaintiff alleges that Hicks stated she "was forced to live in a camper in her front yard," and that she was "homeless," and that Heidelberg, acting on behalf of Rike, repeated these statements when presenting information to the appraisal panel. (Id. ¶¶ 147-149). In reality, plaintiff alleges, defendant Rike "stayed in a newly purchased motorhome at the Property for a mere six (6) nights between 2019-2022, but otherwise lived in the other properties that she owned since Hurricane Florence in 2018." (Id. ¶ 150). Plaintiff alleges Hicks and Heidelberg made these misrepresentations on behalf of Rike "to improperly procure insurance proceeds that Rike was not entitled to receive." (Id. ¶ 153).

Third, plaintiff alleges that defendants Rike, Hicks, and Heidelberg concealed O'Leary's conflicts. In particular, plaintiff alleges they "knowingly allowed Rike's retained consultant, O'Leary, to be named as the umpire . . . without disclosing such fact to [plaintiff], in order to

17

improperly receive additional insurance proceeds." (Id. ¶ 154). As such, plaintiff has alleged facts giving rise to an inference of intentional concealment or fraud by Rike.

Defendant Rike argues that consideration of the full transcript of the testimony of defendant Rike at the examination under oath forecloses plaintiff's claims based upon concealment or fraud.[14] Defendant Rike relies in part upon a decision by the United States Court of Appeals for the Eleventh Circuit, in Johnson v. City of Atlanta, 107 F.4th 1292, 1301 (11th Cir. 2024), for the proposition that the court "does not have to accept a complaint's allegations as true when they are contradicted by a document that falls under the incorporation by reference doctrine." (Reply (DE 108) at 2).

In this circuit, when a complaint "shows that the plaintiff has adopted the contents of [a] document, crediting the document over conflicting allegations in the complaint is proper." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016). In addition, mirroring the Eleventh Circuit's standard in Johnson, the Fourth Circuit has held the court need not accept a complaint's allegations as true when they are "blatantly contradicted" by an exhibit attached by a defendant. Doriety for Est. of Crenshaw v. Sletten, 109 F.4th 670, 679 (4th Cir. 2024); cf. Johnson, 107 F.4th at 1301 (holding that were a video "obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account). However, when considering a motion under the Rule 12 standard, the court must still "construe facts in the light most favorable to the plaintiff and draw all reasonable inferences in his favor." Goines, 822 F.3d at 169. At the pleading stage, the court must be mindful that "unilateral documents may reflect the defendant's version of

---

[14]     Defendant Rike makes this argument in challenging the "unfair or deceptive act" element of plaintiff's UDTPA claim. (See Def's Mem. (DE 103) at 13). Where the argument is pertinent equally to the concealment or fraud provision, the court addresses also in the analysis of plaintiff's claim for breach of that provision.

contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff." Id. at 168.

Here, consideration of the transcript of the examination under oath does not foreclose plaintiff's claims. As an initial matter, the transcript does not conflict with or contradict those allegations in the complaint, identified above, that serve as the basis for plaintiff's claims premised upon concealment or fraud. For example, plaintiff alleges in the complaint: "During the April 29, 2022 [examination under oath], Rike testified that she stayed in a newly purchased motorhome at the Property for a mere six (6) nights between 2019-2022, but otherwise lived in the other properties that she owned since Hurricane Florence in 2018." (Compl. ¶ 150). This allegation is not blatantly contradicted by or conflicting with the transcript of the examination under oath. Indeed, the following testimony is consistent with the instant allegation in the complaint regarding the camper:

> Q: Did you ever live in a camper on your property?
> A: I spent more than one night there. I didn't actually live there.
> . . . .
> Q: And how many nights since you bought it have you slept in it?
> A: Six.
> Q: . . . Was it all in a row?
> A: No.

(Tr. (DE 29-8) at 105-106). Likewise the following testimony is consistent with the allegation regarding the other properties in which she stayed:

> Q. . . . [I]s it fair to say from the time of Hurricane Florence when you moved out you lived in 52 Webb Court for a period of time, then 114 Center Drive for a period of time, and then the garage apartment up through the present?
> A. Yes.
> . . . .
> Q. Did you rent any properties . . . ?
> A. No. I looked into renting something that would be comparable to my house, but it was not affordable.

19

(Id. at 18).  While defendant Rike seeks to rely upon additional information provided in her testimony, such as her inability to rent out her own properties while she was living in them, this additional information does not "blatantly contradict" or "conflict[]" with the identified allegations in the complaint. Doriety, 109 F.4th at 679; Goines, 822 F.3d at 167.  The court leaves for another day defendant Rike's additional testimony and arguments related to loss of use upon a more complete record.[15]  At this juncture, it suffices that plaintiff has alleged facts giving rise to a plausible inference of concealment or fraud in statements about loss of use made by defendants Hicks and Heidelberg on behalf of defendant Rike.

Defendant Rike also challenges plaintiff's claims premised upon misrepresentations or concealment of information about defendant O'Leary, asserting she always "told the truth when asked" about O'Leary, she never had "anything to do with the selection" of O'Leary, and she never "knew anything to disclose about Hicks' and/or Heidelberg's businesses."  (Def's Mem. (DE 103) at 14).  She further contends that plaintiff "fails to allege any facts showing that O'Leary, Hicks, or Heidelberg intended to deceive" plaintiff about O'Leary, or that any damages resulted from the alleged concealment.  (Id. at 18).  These arguments are unavailing, however, because they depend upon assertions and allegations outside the complaint, drawing inferences in defendant Rike's favor.  When construed together in the light most favorable to plaintiff, the allegations in the complaint permit an inference that defendant Rike concealed the extent of her communications and relationship with O'Leary, that defendants Hicks and Heidelberg also concealed such information on defendant Rike's behalf, and that this concealment induced plaintiff to proceed forward with the appraisal, resulting in an intentionally inflated award to defendant Rike.  (See,

---

[15]        Defendant Rike also takes issue with plaintiff's allegation in the complaint that she "testified under oath that she did not actually incur any Loss of Use," as contradicted by the actual testimony in the transcript of the examination under oath.  (Def's Mem. (DE 103) at 13).  The court does not rely upon this allegation, however, in addressing plaintiff's claims premised upon concealment or fraud.

e.g., Compl. ¶¶ 20, 28, 31, 34-57, 87-88, 143-144, 154). In addition, as to plaintiff's claim based upon defendant Rike's testimony concerning the extent of her discussions with defendant O'Leary, the facts alleged permit an inference that plaintiff was damaged by defendant Rike's alleged misrepresentations in its ability to examine and assess the basis and viability of the insurance claim. (Compl. ¶¶ 142, 145).

In sum, plaintiff has alleged conduct by defendant Rike falling within the scope of the concealment or fraud provision in the policy, sufficient to state a claim in its declaratory judgment Count VIII for voiding defendant Rike's water leak claim. In so holding, the court expresses no opinion on the likely success or relative strength of each part of plaintiff's claim against defendant Rike, only that a claim has been stated based upon the allegations of the complaint.

2.      UDTPA

Defendant Rike argues the UDTPA claim should be dismissed because the pleadings establish that she was not engaged in a business activity, and because the complaint fails to allege all the elements of the claim. Although a close question as to business activity, the court determines that dismissal for the reasons asserted is not warranted at this stage of the case.

a.      Business Activity

The UDTPA provides that "[u]nfair or deceptive acts or practices in or affecting commerce . . . are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "For purposes of this section, 'commerce' includes all business activities." Id. § 75-1.1(b). "The term 'business' generally imports a broad definition," including "the combined activities of those engaged in the purchase and sale of commodities or in related financial transactions." Bhatti v. Buckland, 328 N.C. 240, 245 (1991). Thus, as used in the UDTPA, "the term 'business activities' connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of

21

goods, or whatever other activities the business regularly engages in and for which it is organized." White v. Thompson, 364 N.C. 47, 52 (2010). The UDTPA "regulate[s] two types of interactions in the business setting: (1) interactions between businesses, and (2) interactions between businesses and consumers." Id. As such, it "regulat[es] unfair and deceptive conduct in interactions between market participants, both businesses and consumers." Id. at 53.

"The Act was clearly intended to benefit consumers, but its protections extend to businesses in appropriate contexts." HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 592 (1991). "The purpose of [the UDTPA] is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public in this State, and it applies to dealings between buyers and sellers at all levels of commerce." Bhatti, 328 N.C. at 245 (emphasis in original).

In Bhatti, the North Carolina Supreme Court examined a "'homeowner's exception' created by the [North Carolina] Court of Appeals" to the "commerce" requirement in the UDTPA. Id. at 244. The court noted that, in two cases, the North Carolina Court of Appeals "has held that private homeowners selling a residence are not subject to the Act." Id. It quoted a statement by the court in Rosenthal v. Perkins, 42 N.C. App. 449 (1979), as follows:

> The defendants were not engaged in trade or commerce. They did not by the sale of their residence on this one occasion become realtors. It is clear from the cases involving violation of the Unfair Trade Practices Act that the alleged violators must be engaged in a business, a commercial or industrial establishment or enterprise.

Id. (quoting Rosenthal, 42 N.C. App. at 454). It also quoted Robertson v. Boyd, 88 N.C.App. 437 (1988), for the proposition that "private parties engaged in the sale of a residence are not involved in trade or commerce and cannot be held liable under Chapter 75." Id. (quoting Robertson, 88 N.C. App. at 443). However, after outlining the broad, inclusive, language of the statute, the North Carolina Supreme Court noted: "Assuming that a 'homeowner's exception' exists, its application

is limited to an individual involved in the sale of his or her own residence." Id. at 246. The court thus declined to extend its application in that case to a defendant's advertisement of property for sale, which it characterized as "a commercial land transaction." Id.

In this case, the allegations in the complaint permit a plausible inference that defendant Rike's alleged activities were "in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). As an initial matter, this case does not involve the sale of a residence by a homeowner, and thus does not fall within the judicially-created "homeowner's exception" to the "commerce" element. Bhatti, 328 N.C. at 245. Instead, it concerns the pursuit of an insurance claim, which by its nature constitutes an "interaction[] between business[] and consumer[]," White, 364 N.C. at 52, akin to a financial transaction[]." Bhatti, 328 N.C. at 245. Moreover, plaintiff alleges that defendants Hicks and Heidelberg acted on her behalf in misrepresenting and concealing facts from plaintiff concerning defendant Rike's loss of use and her prior business relationship with defendant O'Leary. (See Compl. ¶¶ 115, 146-154). The involvement of an insurance adjuster, an appraiser, and an umpire with whom defendant Rike had had prior separate business relationship, further gives rise to a plausible inference of activities "in or effecting commerce." N.C. Gen. Stat. § 75-1.1(a).

Defendant Rike argues that "[j]ust as there was no UDTPA claim against the Rosenthal homeowners for the alleged acts of their realtor, there cannot be a UDTPA claim against Rike, an individual who made an insurance claim on her home, for the alleged deceptive acts of her public adjuster and appraiser." (Reply (DE 108) at 5). The defendant in Bhatti, however, also acted "through his agent" in making alleged misrepresentations in the sale of the property, and that did not insulate the defendant from UDTPA liability. Bhatti, 328 N.C. at 241. Thus, UDTPA liability depends not on whether a defendant acts through an agent, but rather whether the defendant's

23

actions, through that agent, fall "well within the banks of the stream of commerce as broadly defined by the General Assembly in N.C.G.S. § 75–1.1." Id. at 246. Moreover, "the burden [falls] to the defendant to prove that [s]he is exempt from the provisions of N.C.G.S. § 75–1.1. Id. at 243-44. Therefore, the court leaves for another day on a more complete record determination of the "commerce" element of plaintiff's UDTPA claim.

b.    Remaining Elements

To state a claim under the UDTPA, a plaintiff must allege defendant committed: "(1) an unfair or deceptive act or practice . . . (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff or to his business." Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 121 (4th Cir. 2021). As pertinent here, "[a] practice is deceptive if it has a tendency or capacity to deceive." Id.

"Though a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA, North Carolina courts have consistently held that a party may demonstrate and prove such a claim in conjunction with a breach of contract claim if it can show substantially aggravating and egregious circumstances attending the breach." Foodbuy, 987 F.3d at 121. "Examples of such aggravating and egregious behavior include: (1) lying and concealing a breach combined with acts to deter further investigation; and (2) intentional deception for the purpose of continuing to receive the benefits of an agreement." Id. "[W]hen the same course of conduct supports both breach of contract and a UDTPA violation, a plaintiff has a right to treble damages." DENC, LLC v. Philadelphia Indem. Ins. Co., 32 F.4th 38, 52 (4th Cir. 2022).

Here, plaintiff asserts a UDTPA claim on the basis of the same alleged conduct underlying its declaratory judgment claim for breach of the concealment or fraud provision in the policy. (See

24

Compl. ¶¶ 115, 146-154).  These allegations of concealment or fraud are sufficient to "demonstrate deception to show an aggravated contract breach that violates the UDTPA."  DENC, 32 F.4th at 52-53.

Defendant Rike argues that "[w]hen a party brings a UDTPA claim based on an alleged misrepresentation, the party must show actual reliance on the misrepresentation."  (Reply (DE 108) at 4 (citing Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 575 (E.D.N.C. 2019)).  This is not a correct statement of the law.  "The elements required to be proved for fraud claims are dissimilar from those required under the UDTPA[:] Fraud contains elements of subjectivity of the perpetrator (intent) and the victim (actual reliance), [whereas] UDTPA claims require neither intent of the actor nor actual reliance of the victim."  Foodbuy, 987 F.3d at 122 (emphasis added). "Furthermore, what constitutes an unfair and deceptive trade practice is a matter of law and requires less burdensome elements of proof than fraud."  Id.  Plaintiff's argument based on reliance, thus, is unavailing.

In sum, that part of defendant Rike's motion seeking dismissal of the UDTPA claim is denied.

3.    Civil Conspiracy

Defendant Rike argues that plaintiff's civil conspiracy claim fails because it has failed to plead sufficient facts regarding the existence of an agreement between defendants.[16]  The court disagrees.

"To create civil liability for conspiracy there must have been an overt act committed by one or more of the conspirators pursuant to the scheme and in furtherance of the objective."  Shope

---

[16]    Defendant Rike also argues that the civil conspiracy claim fails because the UDTPA claim, as an underlying claim for unlawful conduct, fails.  However, because the court allows the UDTPA claim to proceed, the court does not reach this argument.

v. Boyer, 268 N.C. 401, 405 (1966). Here, plaintiff has alleged sufficient facts to create a plausible inference of an agreement between defendant Rike and defendant Hicks to commit the unlawful acts alleged in support of plaintiff's UDTPA claim and declaratory judgment claim based upon breach of the concealment or fraud provision. Plaintiff alleges that defendant Rike retained defendant Hicks as her adjuster, and that "acting as Rike's public adjuster," defendant Hicks invoked the appraisal provision, retained Heidelberg, and then engaged in representation and false statements to obtain a more favorable loss award. (Compl. ¶¶134-35).

In sum, that part of defendant Rike's motion seeking dismissal of the civil conspiracy claim is denied.

### 4. Defendant Rike's Breach of Contract Counterclaim

Defendant Rike argues that she is entitled to judgment as a matter of law on her breach of contract counterclaim, because it is undisputed the appraisal provision requires plaintiff to pay the full amount of the loss within 60 days of the appraisal, and plaintiff never paid any amount and instead is refuting its agreement to be bound by the award. Defendant Rike, however, is not entitled to judgment in her favor on her breach of contract claim, where plaintiff asserts the appraisal award must be vacated pursuant to the concealment or fraud provision of the same policy. (Compl. ¶¶ 138-156; Ex. 1 (DE 1-1) at 29). Moreover, in light of the conditions in the appraisal provision, plaintiff "is not obligated to pay the full amount—or for that matter, any amount—of an appraisal award, which may be reduced or denied by policy exclusions and limitations." Sadler, 365 N.C. at 183. Plaintiff "retains the right to determine in the first instance what portion of that loss is covered by the policy." Id. at 182-83. Accordingly, judgment as a matter of law in favor of defendant Rike on her breach of contract counterclaim is not warranted.

Defendant Rike, nonetheless, argues that plaintiff waived the provisions in the policy allowing it to deny the claim after an appraisal. Plaintiff cites to this court's decision in <u>Rike I</u> for the proposition that "an insurer may be found to have waived a provision or condition in an insurance policy which is for its own benefit." (Reply (DE 108) at 8 (quoting <u>Rike I</u>, 516 F.Supp.3d at 526)). However, by the same authority, for waiver to apply, "there must have been knowledge on the part of the insurer of the pertinent facts." <u>Rike I</u>, 516 F.Supp.3d at 526. Plaintiff in this case alleges that it did not have knowledge of the pertinent facts because of misrepresentations and concealment on the part of defendants. Accordingly, the court leaves for another day, on a more complete record, resolution of defendant Rike's claim for breach of contract and her assertion of a waiver defense to plaintiff's claims.

## CONCLUSION

Based on the foregoing, defendant Rike's motion for judgment on the pleadings (DE 102) is GRANTED IN PART and DENIED IN PART. Plaintiff's declaratory judgment Count III is DISMISSED for failure to state a claim. All other claims subject of the motion, including defendant Rike's counterclaim for breach of contract, shall proceed forward. Upon the parties' joint motion, deadlines in this case hereby are extended as follows: 1) all discovery shall be served in time to be completed by May 23, 2025, 2) all potentially dispositive motions and motions to exclude expert testimony shall be filed by July 25, 2025, and 3) all other terms and conditions set forth in the court's January 12, 2023, case management order, not altered herein, shall remain in full force and effect.

SO ORDERED, this the 13th day of February, 2025.

LOUISE W. FLANAGAN
United States District Judge

27